# IN THE UNITED STATES DISTRICT COURT
# FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| **UNITED STATES OF AMERICA** : | **CRIMINAL ACTION** |
| : | |
| v. : | **NO. 04-269-5** |
| : | |
| **DAWUD BEY** : | |

## MEMORANDUM

**KEARNEY, J.**  October 25, 2018

Pennsylvania Law now allows medical providers to prescribe marijuana as a pain treatment. As we learned during a hearing on the United States' request to modify the terms of a citizen's supervised release after he served a long prison term, Pennsylvania's permission may confuse some Pennsylvanians as to their ability to use marijuana of any type for any reason under federal law. At the formerly incarcerated citizen's request, we held a hearing to address his confusion. We strongly reminded him the possession, use and distribution of marijuana—even medical marijuana prescribed by a medical provider under Pennsylvania Law—is illegal under federal law. After today, neither he, nor any Pennsylvanian, can doubt federal law preempts Pennsylvania's limited permission to use and possess doctor-prescribed medical marijuana. Persons released from prison subject to this Court's supervised release—as with all Pennsylvanians—may not use, possess or distribute marijuana under federal law.

But given the citizen's confusion and the absence of a clear statement from a Pennsylvania federal court in the criminal context of federal law's absolute prohibition after the Commonwealth's allowance of medical marijuana, we defer modifying the terms of his supervised release for thirty days so he can prove no further use of a controlled substance and obtain a prescribed pain treatment protocol not involving controlled substances, including marijuana. He assured us of no further confusion and he, and others, are now on notice.

I.  **Background**

Dawud Bey plead guilty in February 2005 to conspiracy to manufacture and distribute cocaine under 21 U.S.C. § 846.[1] The Honorable Mary A. McLaughlin sentenced Mr. Bey in 2006 to 120 months imprisonment followed by five years of supervised release.[2] He has approximately sixteen more months on supervised release. The terms of Mr. Bey's supervised release prohibit him from "commit[ing] another federal, state or local crime."[3] The sentence specifically prohibits Mr. Bey from "unlawfully possess[ing] a controlled substance"[4] or "purchas[ing], possess[ing], us[ing], distribut[ing], or administer[ing] any controlled substance . . . except as prescribed by a physician."[5]

In April 2018, over three years into his five-year term of supervised release, Mr. Bey reported to the U.S. Probation Office smelling of marijuana.[6] The Probation Officer asked Mr. Bey "if he has abused marijuana," and Mr. Bey admitted he had.[7] When Mr. Bey returned to the Probation Office on June 5, 2018, he presented the Probation Officer with a medical marijuana prescription he had obtained shortly before the meeting.[8] Mr. Bey submitted urine specimens to the Probation Office on June 5, 2018, September 4, 2018, and September 26, 2018. Each tested positive for marijuana.[9]

Mr. Bey swore he uses medical marijuana as pain management to relieve chronic pain suffered over the past few years.[10] He testified trying other analgesics but they exhausted him or otherwise affected his other prescriptions.

The United States sought to modify—not revoke—Mr. Bey's terms of supervised release to require he "submit to home detention for a period of 30 days, and comply with the [l]ocation [m]onitoring requirements as directed by the U.S. Probation Office."[11] Mr. Bey requested a hearing to contest the petition for modification.[12] Mr. Bey does not dispute he used marijuana

2

and provided three urine samples testing positive for marijuana. He maintains he acted on the advice of his doctor and attorney who counseled him "under the PA Marijuana Program it was ok for [him] to use marijuana for pain management."[13] He claims the differing enforcement by Philadelphia authorities, Pennsylvania authorities, and United States authorities confused him. The United States, while exercising restraint and considerable deference given the possible revocation, expressed doubts regarding the credibility of Mr. Bey's confusion given he admits smoking marijuana for several years and the Probation Officer is aware of Mr. Bey's use of recreational marijuana. After hearing from Mr. Bey, we find him credible as to his confusion particularly after the advice of two professionals who should know better under federal law.

**II.     Analysis**

**A.     Mr. Bey admits possessing and using marijuana.**

Despite a wave of marijuana legalization at the state level, the Supreme Court has held federal law's treatment of marijuana is clear: "marijuana [i]s contraband for *any* purpose; in fact, by characterizing marijuana as a Schedule I drug, Congress expressly found that the drug has no acceptable medical uses."[14] Mr. Bey's possession and use of marijuana is contrary to federal law and the terms of his supervised release.

Marijuana is one of many drugs in the United States classified and governed by the Controlled Substances Act, "a closed regulatory system making it unlawful to manufacture, distribute, dispense, or possess any controlled substance except in a manner authorized by the [Act]."[15] Congress "categorize[d] all controlled substances into five schedules."[16] Congress "classified marijuana as a Schedule I drug," the most restricted designation reserved for drugs having a "high potential for abuse, *lack of any accepted medical use*, and absence of any accepted safety for use in medically supervised treatment."[17]

3

The Controlled Substances Act contains no exception—express or implied—for medically-prescribed marijuana, a mandate the Supreme Court made clear in *United States v. Oakland Cannabis Buyers' Cooperative*.[18] In *Oakland Cannabis*, the United States sued a not-for-profit Cooperative providing medical marijuana to cooperative-approved patients under California law.[19] The United States argued the Controlled Substances Act prohibits the sale or use of marijuana—even for medical purposes—despite California's contrary state law policy. The United States obtained a preliminary injunction, which the Cooperative then openly violated "by distributing marijuana to numerous persons."[20] The United States, in turn, initiated contempt proceedings; the cooperative defended their actions on the ground "any distributions were medically necessary."[21] The district court rejected the Cooperative attempt to modify the injunction to permit medically necessary distributions.[22] On appeal, the United States Court of Appeals for the Ninth Circuit held "the medical necessity defense was a legally cognizable defense that likely would apply in the circumstances" and remanded.[23]

The Supreme Court reversed. The Court held implying "a medical necessity exception for marijuana is at odds with the terms of the Controlled Substances Act," which "reflects a determination that marijuana has no medical benefits worthy of an exception (outside the confines of a Government approved research project)."[24] The Court acknowledged some drugs "can be dispensed and prescribed for medical use," but not marijuana; the drug "has 'no currently accepted medical use' at all."[25]

The Supreme Court again emphasized marijuana's contraband status under the Controlled Substances Act in *Gonzales v. Raich*.[26] In *Raich*, California residents using medical marijuana in compliance with California law sued the Attorney General and the head of the Drug Enforcement Administration, seeking to enjoin enforcement of the Controlled Substances Act. The Controlled

4

Substances Act, they argued, exceeded Congress' authority under the Commerce Clause as applied to their purely intrastate, non-commercial use of the drug, which they relied upon to treat their serious medical conditions. The Supreme Court upheld the Controlled Substances Act as a valid exercise of Congress' Commerce Clause authority.[27] Relevant here, the Court emphasized Congress "designate[d] marijuana as contraband for *any* purpose; in fact, by characterizing marijuana as a Schedule I drug, Congress expressly found that the drug has no acceptable medical uses."[28]

The Supreme Court's interpretation of the Controlled Substances Act compels we conclude Mr. Bey may not use medical marijuana under federal law. A Pennsylvania statute or policy to the contrary cannot override a conflicting federal statute, as "[t]he Supremacy Clause unambiguously provides that if there is any conflict between federal and state law, federal law shall prevail."[29]

We therefore join what Judge G. Michael Harvey has described as "the chorus" of federal courts around the country concluding a federal supervisee's state-authorized possession and use of medical marijuana violates the terms of federal supervised release.[30] For example, in *United States v. Schostag*, the United States Court of Appeals for the Eighth Circuit held this past July a "district court ha[s] no discretion to allow [a supervisee] to use medical marijuana while on supervised release."[31] The United States Court of Appeals for the Ninth Circuit reached the same conclusion.[32] The Honorable Royce C. Lamberth of the United States District Court for the District of Columbia in two recent decisions adopted Judge Harvey's analysis and concluded "Defendants under federal supervision are prohibited from using medical marijuana even if that use is in compliance with D.C. law or the law of any other state."[33]

5

## B. We decline to immediately modify Mr. Bey's supervised release.

We nonetheless decline to immediately modify Mr. Bey's supervised release. We will allow Mr. Bey thirty days to show he has not used marijuana through testing and fourteen days to obtain a doctor-prescribed prescription protocol to address Mr. Bey's pain management.

Our Court of Appeals has "repeatedly expressed concern that conditions of supervised release be sufficiently clear to enable individuals on supervised release to freely choose between compliance and violation."[34] Judge McLaughlin's terms of supervised release, as defined in 2006, could not contemplate the advent of state-approved use of marijuana.

Mr. Bey could have reasonably and in good faith read the terms of his supervised release—which prohibits him from using any controlled substance "*except as prescribed by a physician*"[35]—as allowing his prescribed marijuana use in these limited circumstances. Mr. Bey also acted on the advice of his doctor and attorney, who reportedly conveyed to him "under the PA Marijuana Program it was ok for [him] to use marijuana for pain management."[36] Mr. Bey's and his attorney's interpretation, although incorrect, would not have been unreasonable, as it appears our court has yet to resolve this question until today.[37]

Under similar circumstances Judge Lamberth in *United States v. Parker*[38] and *United States v. Johnson*,[39] adopted Judge Harvey's thorough reports and recommendations and declined to revoke the supervisees' terms of supervised release. The supervisees in *Parker* and *Johnson* used marijuana prescribed by their doctors in compliance with District of Columbia law. Judge Lamberth found the supervisees' use of medical marijuana was "not a willful violation" of the terms of supervised release, adopting Judge Harvey's analysis which found it relevant "no judge from this District has previously addressed the issue in a published decision."[40] We find ourselves similarly situated. We give substantially less weight to a 2009 opinion of the

6

Administrative Office of the United States Courts, which is not authority from this Court sufficient to put Mr. Bey or other federal supervisees on notice to allow them to "freely choose between compliance and violation."[41]

While we take seriously our obligation to ensure supervisees comply with the terms of supervised release, we must be equally mindful "the primary purpose of supervised release is to facilitate the integration of offenders back into the community rather than to punish them."[42] In *United States v. Schostag*, the United States Court of Appeals for the Eighth Circuit recently affirmed the district court's modification of supervised release based on the illegal use of medical marijuana but deferred the modification for two weeks to allow the citizen time to find "alternative means to address his chronic pain." [43] Because we find Mr. Bey "did not appreciate that his use of [P.A.]-sanctioned medical marijuana was a violation of his release conditions,"[44] we find, as in *Schostag,* immediately modifying Mr. Bey's terms of supervised release would serve no productive purpose nor would it protect the public. We defer the effective date of home detention for thirty days of Mr. Bey's supervised release without prejudice to the United States seeking revocation if Mr. Bey, now instructed on his obligations, continues to use medical marijuana or otherwise violate the terms of his supervised release.

### III. Conclusion

In an accompanying Order, we granted the United States' motion to modify the terms of Mr. Bey's supervised release for a period of thirty days of home confinement.[45] Using, possessing and distributing marijuana—even medical marijuana permitted by Pennsylvania law—violates federal law.[46] But given his demonstrated confusion and absence of clear direction from a Pennsylvania federal court in the criminal context after the Commonwealth permitted doctors to prescribe medical marijuana, we will defer the home detention for a period

of thirty days to allow Mr. Bey to prove he no longer uses a controlled substance and allow a doctor to prescribe him a pain management protocol which does not involve marijuana or any other controlled substance. While he may claim confusion before today, Mr. Bey—and others released from their prison terms but subject to our terms of supervised release—cannot do so from now on.

---

[1] ECF Doc. No. 808, at 1; *see also* ECF Doc. No. 445.

[2] *See* ECF Doc. No. 808, at 2–3.

[3] *Id.* at 3.

[4] *Id.*

[5] *Id.*

[6] ECF Doc. No. 1180, at 1.

[7] *Id.*

[8] *Id.*

[9] *Id.*

[10] *Id.*

[11] *Id.* at 2.

[12] *Id.*

[13] *Id.*; *see* 35 P.S. § 10231.101 *et seq.*

[14] *Gonzales v. Raich*, 545 U.S. 1, 27 (2005).

[15] *Id.* at 13.

[16] *Id.*

[17] *Id.* at 14 (emphasis added).

[18] 532 U.S. 483 (2001).

[19] *Id.* at 486–87.

[20] *Id.* at 487.

[21] *Id.*

[22] *Id.* at 488.

[23] *Id.* at 488 (citation and internal quotation marks omitted).

[24] *Id.* at 491.

[25] *Id.* (quoting 21 U.S.C. § 812).

[26] 545 U.S. 1 (2005).

[27] *Id.* at 27–33.

[28] *Id.* at 27.

[29] *Id.* at 29.

[30] *United States v. Johnson*, 228 F. Supp. 3d 57, 62 (D.D.C. 2017).

[31] *United States v. Schostag*, 895 F.3d 1025, 1028 (8th Cir. 2018).

[32] *See United States v. Harvey*, 659 F.3d 1272 (9th Cir. 2011) (adopting the district court's reasoning), *aff'g*, *United States v. Harvey*, 794 F. Supp. 2d 1103 (S.D. Cal. 2011) (concluding supervisee who used medical marijuana violated condition of supervised release requiring he "[r]efrain from unlawful use of a controlled substance").

[33] *United States v. Johnson*, 228 F. Supp. 3d 57, 58–59 (D.D.C. 2017); *United States v. Parker*, 219 F. Supp. 3d 183, 184 (D.D.C. 2016).

[34] *United States v. Bagdy*, 764 F.3d 287, 290 (3d Cir. 2014).

[35] ECF Doc. No. 808 at 3 (emphasis added).

[36] ECF Doc. No. 1180 at 2.

[37] Pennsylvania federal courts addressing the interplay between Pennsylvania-sanctioned medical marijuana use and the Controlled Substances Act have not done so in the context of federal supervised release. *See, e.g., PharmaCann Penn, LLC v. BV Dev. Superstition RR, LLC*, 318 F. Supp. 3d 708, 712 (E.D. Pa. 2018) (noting, in the context of analyzing federal jurisdiction over a deed dispute, "'[d]espite the Commonwealth of Pennsylvania's enactment of its medical

marijuana law, the distribution of marijuana remains illegal under federal law.'") (quoting *United States v. Dinh*, 194 F. Supp. 3d 353, 356–57 (W.D. Pa. 2016)); *Dinh*, 194 F. Supp. 3d at 356–58 (rejecting argument Pennsylvania's legalization of medicinal marijuana required grant of habeas relief from federal drug conviction).

[38] 219 F. Supp. 3d 183 (D.D.C. 2016).

[39] 228 F. Supp. 3d 57 (D.D.C. 2017).

[40] *Parker*, 219 F. Supp. 3d at 189. We are mindful our Court of Appeals has acknowledged "by its terms, [18 U.S.C.] § 3583(e)(3) does not include a scienter requirement." *United States v. Jones*, 133 F. App'x 824, 826 (3d Cir. 2005). Our Court of Appeals' discussion of scienter in *Jones* arose on appeal from the district court's revocation of supervised release. Our Court of Appeals noted under the circumstances of the case it "need not dwell on the willfulness of the violation, however, because the District Court was entitled to disbelieve [the supervisee's] contention that he did not know he had to report to the probation office." *Id.* We, by contrast, do not find Mr. Bey's account incredible.

[41] *Bagdy*, 764 F.3d at 290.

[42] *United States v. Murray*, 692 F.3d 273, 280 (3d Cir. 2012) (citation and internal quotation marks omitted).

[43] *Schostag*, 895 F.3d at 1027.

[44] *Parker*, 219 F. Supp. 3d at 189.

[45] ECF Doc. No. 1185.

[46] Mr. Bey does not argue, and nothing in our opinion today concerning a deferred modification of Mr. Bey's supervised release, addresses the affect of existing legislation restricting the United States Department of Justice from using certain funds to pursue individual prosecutions of possessing and using medical marijuana under the Controlled Substances Act. *See* Consolidated Appropriations Act, 2017, Pub. L. No. 115-31, § 537, 131 Stat. 135, 228 (2017); *see also United States v. Nixon*, 839 F.3d 885, 886-87 (9th Cir. 2016) (per curiam) (citing Consolidated Appropriations Act, 2016, Pub. L. No. 114-113, § 542, 129 Stat. 2242, 2332-33 (2015)).